IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Civil Action No. 07-76** |
| v. | ) | **Criminal No. 03-218** |
| | ) | |
| GREGORY LYNN MORRIS | ) | |
| Defendant | | |

## MEMORANDUM AND ORDER OF COURT

### I. INTRODUCTION

Before the Court is Petitioner Gregory Lynn Morris's Petition under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. No. 70), and his

Supplemental Motion (Doc. No. 77) which together raise fourteen grounds for relief. This Court

reviewed his initial petition preliminarily, and pursuant to Rule 4(b) of the Rules Governing

Section 2255 Proceedings, ordered the government to file a response. The Government's

Response (Doc. No. 78) is directed to both the initial and supplemental petitions; thereafter

petitioner filed a reply (Doc. No. 79), Supplemental Appendix (Doc. No. 82), and additional

Exhibits (Doc. No. 83).


### II. PROCEDURAL HISTORY AND BACKGROUND

#### A.     Pretrial and Trial Proceedings

On August 27, 2003, Morris was indicted and charged with one count of possession with

the intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1)

and § 841(b)(1)(A)(iii), and one count of possession with intent to distribute more than 500

grams of cocaine, in violation of 21 U.S.C. §841(b)(1)(B)(ii), both in the Western District of

Pennsylvania.

1

The indictment stemmed from a traffic stop made on December 14, 2002, in which Petitioner was pulled over for swerving three times over a divided line road. The officers conducted a sobriety test that Petitioner failed. Petitioner was subsequently arrested for a DUI and transported to Forbes Regional Hospital in Wilkinsburg, PA. The officers then conducted an inventory search of Petitioner's truck, and found several bags containing white powder and chunky substances inside a book bag in the extended cab portion of the truck.

On November 5, 2003, Petitioner made his initial appearance, arraignment and detention hearing dates were set, and Attorney Gary B. Zimmerman entered his notice of appearance. On November 24, 2003, the Arraignment and Detention hearing for Petitioner was held, at which time Petitioner pled not guilty.

On December 22, 2003, Petitioner filed pretrial motions, including a Motion to Suppress Physical Evidence which asserted that the inventory search of his truck was illegal because it violated the Wilkins Township inventory procedures in the following respects: (i) there was no need to impound the truck because Petitioner's fiancee, Ms. Roscoe, was available to remove the vehicle, suggesting the inventory search was a pretext for a search without probable cause; (ii) the search violated the Wilkins Township inventory policy in that defendant was not given an opportunity to remove the valuables from the car prior to impoundment; or (iii) to verify the completeness of the inventory by his signature.

This Court followed the reasoning in *Opperman*, in which an inventory of a lawfully impounded automobile, where standard police procedures are followed, is not unreasonable under the Fourth Amendment. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). Unless police act in bad faith or for the sole purpose of investigation, evidence obtained during an inventory search conducted pursuant to standardized procedures is admissible. *Colorado v.*

*Bertine*, 479 U.S. 367, 372 (1987). On June 16, 2004, the Court found that the inventory of defendant's truck was made pursuant to standard Wilkins Township procedures, and that there was no evidence that the search was conducted in bad faith or to investigate for evidence of crimes, and so denied the Motion to Suppress. Memorandum Opinion, June 16, 2004 (Doc. No. 30).

On November 4, 2004, counsel for Petitioner and the government filed a stipulation as to the presence and weight of the drugs found in the truck, which states that "if called, . . . a criminalist with the Allegheny County Coroner's Office . . . would testify that he examined and tested the substances recovered from the yellow backpack in this case, as submitted by the Wilkins Township Police," and determined that it contained the following substances and quantities:

> Bag #1 contained 732.8 grams of off-white chunky powder, which tested positive for the presence of cocaine hydrochloride . . .
>
> Bag #2 contained 595.2 grams of off-white chunky powder, which tested positive for the presence of cocaine hydrochloride . . . The total weight of the cocaine powder was 1,328.0 grams . . .
>
> Bag #3 contained 123.75 grams of chunky brown solid, which tested positive for the presence of cocaine base. . . . This cocaine base was in the form commonly known as "crack," . . .
>
> Bag #4 contained 109.29 grams of chunky brown solid, which tested positive for the presence of cocaine base . . . This cocaine base was in the form commonly known as "crack." . . . The total weight of the cocaine base was 233.04 grams.

Stipulation (Doc. No. 47).

On November 5, 2004, the government filed an information regarding a prior conviction for a drug related offense, pursuant to 21 U.S.C. § 851, for purposes of sentence enhancement

(Doc. No. 49).  On November 8, 2004, Petitioner's trial began, and the jury reached a verdict of guilty on both counts on November 16, 2004.

On March 4, 2005, Petitioner was sentenced to 240 months imprisonment on Count One, Possession with Intent to Distribute 50 grams or more of cocaine base, and 240 months imprisonment on Count Two, Possession with the Intent to Distribute 500 grams or more of cocaine, to be served concurrently.  The Court further ordered that the term of imprisonment be followed by 10 years of supervised release on both counts, to be served concurrent, and that Petitioner pay a special assessment of $200.

## B.    The Appeal

Petitioner appealed the judgment on March 4, 2005, challenging this Court's denial of his motion to suppress the physical evidence from the search of the truck and seizure of his book bag and drugs contained therein.  On May 5, 2006, the United States Circuit Court of Appeals for the Third Circuit, in a 2-1 panel decision, affirmed the conviction and upheld the search of the truck.  *United States v. Morris*, 179 Fed.Appx. 825, 826 (3d Cir. 2006) (Becker, J., dissenting).  The Court held that the warrantless search of the Petitioner's truck was permissible under the inventory search exception to the warrant requirement.  *Id.*  Further, the Court held that the drugs found within the book bag were subject to the inevitable discovery exception to the exclusionary rule.  *Id.*  Petitioner's timely petition for rehearing was denied on June 29, 2006. Petitioner filed a *pro se* petition for writ of certiorari on August 14, 2006, which was denied on November 27, 2006.

## C.    The Motion to Vacate (Doc. No. 70)

On January 18, 2007, Petitioner filed a *pro se* Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 70), listing the following thirteen grounds in support of the motion, mostly all in the

context of ineffective assistance of trial and/or appellate counsel: (I) Sixth Amendment violation of constitutional right to effective assistance of counsel; (II) Fifth Amendment violation of protection against self-incrimination; (III) use of a coerced confession; (IV) Violation of Due Process because of prosecutorial vouching for Government witnesses and improper closing arguments; (V) Conviction or sentence obtained in violation of the protection against double jeopardy; (VI) Counsel failed to raise at sentencing and on appeal that a *Booker* violation occurred and that Petitioner's sentencing enhancement should not have applied; (VII) Counsel was ineffective for not arguing or appealing that the sentencing court had viewed the crack/power cocaine differential as mandatory; (VIII) Counsel failed to argue that the district court should have stricken the word "cocaine base," commonly known as crack, from the indictment; (IX) The prior 1986 state drug conviction used to enhance Petitioner's federal sentence was constitutionally defective; (X) Counsel was ineffective for failing to properly challenge or appeal erroneous jury instructions; (XI) Counsel's multiplicity of errors prejudiced Petitioner and thereby denied him his Sixth Amendment constitutional rights to effective assistance of counsel and a fair trial; (XII) Counsel was ineffective in failing to call an important witness, Neil Chandler, to testify at trial; and (XIII) Petitioner's criminal history points were improperly calculated, affecting his placement in the sentencing guidelines, and his eventual sentence.

In his supplemental motion, Petitioner added a fourteenth ground for relief, namely: (XIV) federal courts have no jurisdiction over criminal offenses because when 18 U.S.C. § 3231 (original jurisdiction of district courts over offenses against the laws of the United States) was enacted, Congress had adjourned on June 20, 1948 and ceased to exist, and Representative Martin and Senator White exercised "unlawful" Concurrent Resolution authority when they

"sign[ed] H.R. 3190 into law without having a vote on it and having such vote entered on the Journal." Petitioner's Supplemental Motion ("Supplemental Motion"), at 10-12.

On March 30, 2007, the government filed its response to Petitioner's motion and supplemental motion and on April 24, 2007, Petitioner replied to the government's response.

On May 30, 2007, this Court filed a Memorandum Opinion and Order (doc. no. 81) stating that an evidentiary hearing *may* be required as to one issue raised in Petitioner's Ground XII: whether Petitioner's trial counsel was ineffective in failing to call a witness, Neil Chandler, whom Petitioner asserts would have corroborated his trial testimony and defense. Specifically, this Court stated:

> After careful consideration of the initial and supplemental petitions, the government's response and petitioner's reply, the Court is of the opinion that an evidentiary hearing may be required under Rule 8 as to one issue [FN. 1] designated Ground XII: whether petitioner's trial counsel was ineffective in failing to call a witness, Neil Chandler, who, petitioner asserts, would have corroborated his trial testimony and defense that the crack cocaine found in his vehicle belonged to and was placed there (unbeknownst to him) by a man named Joey Lewis, a/k/a "Joey Crack," to whom petitioner had lent his vehicle earlier that evening. If proven, this issue could, conceivably, present a viable ground for relief. See *Berryman v. Morton*, 100 F.3d 1089 (3d Cir. 1996)(failure to investigate potential material defense witnesses fell below professional standards of competence, and prejudiced petitioner under *Strickland*).

> [FN.1] It does not appear that an evidentiary hearing will be necessary as to petitioner's other grounds for relief, although the Court does not decide that definitely at this time.

> However, before deciding whether to conduct a Rule 8 evidentiary hearing, this Court must first determine whether petitioner's Ground XII presents a viable claim, and will therefore require petitioner, pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, to submit a sworn Affidavit by Neil Chandler to the Court setting forth the following: (i) the nature and substance of his proposed testimony; (ii) whether he is available and willing to testify on petitioner's behalf; (iii) whether he was available and willing to testify on petitioner's behalf at his trial in November, 2004; and (iv) whether he was interviewed by trial counsel or anyone assisting trial counsel prior to the trial and, if so, the nature and substance of the information he gave to trial counsel.

After receiving said Affidavit, the Court will then determine whether to conduct a Rule 8 evidentiary hearing on this or any other issues raised by petitioner as grounds for relief under Section 2255, and whether to appoint counsel. Accordingly,

AND NOW, this 30th day of May 2007, IT IS HEREBY ORDERED that on or before July 31, 2007, petitioner shall file with the Court a sworn Affidavit by Mr. Neil Chandler as set forth above. The Court will thereafter determine the viability of this ground for relief, and whether to schedule an evidentiary hearing.

Memorandum Opinion (doc. no. 81), at 1-2.

Petitioner has not submitted an Affidavit by Chandler or any other supporting witnesses,

nor has he submitted any explanation for his failure to file such an Affidavit.

## III. STANDARDS

### A. 28 U.S.C. § 2255: Petition to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody

28 U.S.C. § 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence. Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

Whether to conduct a hearing is within the sound discretion of the district court. *United States v. Day,* 969 F.2d 39, 41 (3d Cir. 1992), quoting *Government of the Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989), *cert denied* 500 U.S. 954 (1991). In exercising that discretion,

"the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record. Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Day*, 969 F.2d at 41-42 (citation omitted). See also, Rules Governing 2255 Proceedings, Rules 4 and 8.

A section 2255 motion "can be dismissed without a hearing [only] if (1) the petitioner's allegations, accepted as true would not entitled the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir.1995). The court should view the factual allegations in the light most favorable to the petitioner. *Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir.1994) (district court erred in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted). The district court abuses its discretion when it fails to grant an evidentiary hearing "when the files and records of the case are inconclusive on the issue of whether [the] movant is entitled to relief." *McCoy*, 410 F.3d at 133, quoting *Solis v. United States*, 252 F.3d 289, 293 (3d Cir. 2001). In reviewing a *pro se* motion, the court must "construe . . . pleadings, and . . . 'apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683 (3d Cir. 2002) quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1993)

### B. Cause and Prejudice

The standard of review for a section 2255 motion raising issues that were available but not previously presented is the "cause and actual prejudice" standard. *United States v. Frady*,

456 U.S. 152 (1982). "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 167-68. The United States Court of Appeals for the Third Circuit has stated that "[t]he proper device for challenging assistance of counsel is a motion under 28 U.S.C. § 2255." *United States v. Mustafa*, 238 F.3d 485, 497 (3d Cir. 2001). "In *Massaro v. United States*, 538 U.S. 500 (2003), the Supreme Court held that 'an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.'" *United States v. Davies*, 394 F.3d 182, 188 (3d Cir. 2005) (parallel citations omitted).

### C.     Ineffective Assistance of Counsel

Petitioner claims counsel was ineffective in both the trial and appellate phases in several grounds of his petition. As with all claims of ineffective assistance of counsel, his claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. The Court in *Strickland* developed a two-pronged test that a petitioner must satisfy in order to succeed: Petitioner must first demonstrate that his attorney's performance was deficient, and he must also show that his attorney's deficient performance prejudiced the outcome of his case. *Strickland*, 466 U.S. at 687, 694.

Under the first prong, the standard for attorney performance is "reasonably effective assistance," or "reasonableness under prevailing professional norms." *Id.* In evaluating the reasonableness of counsel's performance, the attorney's actions are to be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

There is a presumption of reasonableness that can only be rebutted by a petitioner "proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 384.

To rebut this presumption, "a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005). There is an initial "weak" presumption of sound strategy for counsel's conduct that can be rebutted by a petitioner "showing either that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." *Id*. at 499-500.

The court must evaluate the overall performance of counsel to determine whether the petitioner has overcome the reasonableness presumption. *Kimmelman*, 477 U.S. at 386. Ineffective assistance of counsel will not be found based on "speculation about how the case might best have been tried," in hindsight. *Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998).

In order to satisfy the prejudice element of the *Strickland* test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, "[t]here will be no award of relief unless the defendant affirmatively establishes the likelihood of an unreliable verdict." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993).

The *Strickland* test applies to both trial and appellate counsel. The test for ineffective assistance of appellate counsel prejudice under *Strickland* is not whether the petitioner would likely prevail upon remand, but whether the issue would likely be reversed and remanded if the issue had been raised on direct appeal. *United States v. Mannino*, 212 F.3d 835 (3d Cir. 2000).

In the context of a section 2255 petition for collateral relief, the Court of Appeals for the

Third Circuit has offered the following guidance.

> The . . . test for determining whether a hearing should be held on an ineffectiveness claim is slightly altered by the *Strickland* holding. Our analysis of allegations of ineffectiveness of counsel breaks down into two parts. First, we must determine whether the district court considered as true all of appellant's nonfrivolous factual claims. This step requires that we review whether the district court properly found certain allegations frivolous. Second, we must determine whether, on the existing record, those claims that are nonfrivolous conclusively fail to show ineffective assistance of counsel. To evaluate claims under this second step, we must turn to both prongs of the *Strickland* test. If a nonfrivolous claim clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing. If, on the other hand, a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required. That is, if a nonfrivolous claim does not conclusively fail either prong of the *Strickland* test, then a hearing must be held. Thus, the district court must employ the *Strickland* analysis at least once, and may have to employ it twice – first as a threshold analysis of all claims on a limited record, and then again only on colorable claims after full factual development of those claims.

*United States v. Dawson*, 857 F.2d 923, 927-28 (3d Cir.1988).

## IV.  DISCUSSION

### Ground I: Trial counsel was ineffective in failing to file a motion to suppress his statement

Petitioner first asserts that trial counsel violated his Sixth Amendment right to effective

assistance of counsel when he "did not file a motion to suppress the incriminating statement" he

made to Detective DeMarco, namely  "the powder is mine, but not the rock."  According to

Morris, counsel did not move to suppress this statement because counsel was confident that

"'[the] case should not go to trial because [of] the illegal search of [the petitioner's] truck."

Petitioner's Memorandum at 6.

Petitioner's claim contradicts his own testimony at trial. Petitioner explicitly testified in his own defense that he did not talk to Sergeant DeMarco. Trial Transcript, November 9, 2004 ("Tr. 11/09/2004") at 113. In fact, Petitioner's counsel specifically asked Morris on direct examination about the statement that he now claims ought to have been suppressed:

> Q: So there's testimony that you made the statement the cocaine is mine, but the crack is not. Did you say that?

> A: No. I did not.

*Id.*

Petitioner's first claim does not warrant relief, and does not require a hearing because the allegations are contradicted by his own testimony. *McCoy*, 410 F.3d at 134, citing *Engelen*, 68 F.3d at 240. Counsel's and defendant's trial strategy was to deny that Morris made *any* statements to police officers while in custody. Morris does not now claim that his trial testimony was false, nor does he allege that counsel threatened or coerced him into perjuring himself, and it necessarily follows that Morris agreed with that strategy. Petitioner cannot be heard to complain that counsel should have tried to suppress a statement which he testified at trial, under oath, he never made.

### Grounds VI, VII, VIII, X, and XIII: Identity and Quantity of Drugs and Related Sentencing Issues pertaining to *United States v. Booker*

Petitioner's Grounds VI, VII, VIII, X, and XIII raise related claims of ineffective assistance of counsel concerning counsel's perceived failure to demand that the jury determine the quantity and identity of the drugs, in light of *United States v. Booker*, 543 U.S. 220 (2005), or to raise the issue on direct appeal. Petitioner also claims that the "rock" substances found in his truck were never proven to be crack cocaine beyond a reasonable doubt.

Petitioner's underlying argument that the substances were never proven to be crack

cocaine must fail because he *stipulated* that the substances were, in fact, crack cocaine. Exhibit J-3 was read to the jury and filed of record, Stipulation (Doc. No. 47), which stipulated that the parties agreed that if called, a criminalist with the Allegheny County Coroner's Office would have testified that he examined and tested the substances recovered, and that "Bag No. 3 contained 123.75 grams of chunky brown solid, which tested positive for the presence of cocaine base, [and this] cocaine base was in the form commonly known as 'crack.'. . . and [that] Bag No. 4 contained 109.29 grams of chunky brown solid, which tested positive for the presence of cocaine base, [and that this] cocaine base was in the form commonly known as 'crack.'" Tr. 11/09/2004 at 49-50. (The other two bags contained the powder cocaine. *Id*.). Morris received the laboratory results before counsel filed the stipulation, and does not offer any evidence contradicting either the laboratory report or the stipulation, nor does he claim that counsel coerced or duped him into agreeing to an erroneous stipulation.

Because Morris stipulated that the substances found were crack, he essentially stipulated to an element of the offense. See also *Gonzalez v. United States*, __ U.S. __, 2008 WL 2001954 (May 12, 2008) (an attorney, acting without indication of particular consent from his client, could waive his client's statutory right to a speedy trial and right to proceed at certain stages of proceeding before a United States Magistrate Judge); *Virgin Islands v. Rosa*, 399 F.3d 283, 291 (3d Cir. 2005) ("an explicit agreement or stipulation constitutes a waiver of rights if the defendant was aware of that right"). Petitioner remains bound by his stipulation.

Petitioner's reliance on *Booker* is misplaced. First, *Booker* does not apply retroactively to section 2255 petitions. *Lloyd v. United States*, 407 F.3d 608 (3d Cir. 2005). Petitioner's date of final conviction was November 16, 2004, and the effective date of *Booker* was January 12, 2005. See also *United States v. Rennert*, 182 Fed. Appx. 65 (3d Cir. 2006) (the fact that a

conviction becomes final after *Blakely v. Washington*, 542 U.S. 296 (2004) but before *Booker* is "inconsequential," *Lloyd* still precludes retroactive application of *Booker* to a section 2255 motion).

Second, Petitioner's argument ignores authority instructing that in post-*Booker* cases, the quantity of drugs for which the defendant is to be held accountable remains an issue for the sentencing court to be determined by a preponderance of the evidence. *Booker* held that "[a]ny fact . . . which is necessary to support a sentence exceeding the *maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant* or proved to the jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244 (emphasis added). Additionally, the Court stated that the finder of drug quantities remains the judge, not the jury: "A system that would require the jury, not the judge, to make the additional drug quantity finding is a system in which the prosecutor, not the judge, would control the sentence because it is the prosecutor who would have to decide what drug amount to charge." *Id.* at 257.

Thus, a district court may make findings of fact that increase a sentence beyond the advisory Guidelines sentencing range provided the court takes into account the relevant sentencing factors listed in 18 U.S.C. § 3553(a), are within the statutory minimum and maximum dictated by the United States Code, and are procedurally and substantively "reasonable." *United States v. Gunter*, 462 F.3d 237, 243-44 (3d Cir. 2006). Facts that are pertinent for an application of the Sentencing Guidelines are to be found by the district court by a preponderance of the evidence. *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006).

Because *Booker* does not apply retroactively to section 2255 petitions, and because it provides no relief to petitioner in any event, his claims of alleged *Booker* violations will be dismissed without a hearing. Petitioner was not prejudiced by counsel's failure to anticipate the

14

holding in *Booker* or argue its applicability to his sentence, and he was not ineffective in failing to object to or appeal the nature and quantity of the crack cocaine which was proven by his stipulation.

**Identity of the Drugs**

Morris's claim in Ground VI concerning his sentence enhancement based on the identity of some of the substances as crack cocaine, as opposed to powder cocaine, lacks a factual basis for an ineffective assistance of counsel claim in light of his stipulation.

Petitioner alleges in Ground VIII that counsel was ineffective for failing to "protect [him] against immaterial or irrelevant allegations in an indictment," in that counsel did not request the District Court to strike the words "cocaine base, commonly known as crack" from the indictment as surplusage, or raise the issue on appeal. Petitioner's Memorandum at 22. Ground X claims that counsel was ineffective for failing to properly challenge "erroneous" jury instructions, in that the jury was "unfamiliar" with the term "cocaine base" and there was no scientific expert testimony to provide "meaningful legal guidance" and that the government never proved that the substance was crack cocaine. Petitioner's Memorandum at 24-25. Petitioner offers no authority to support these novel propositions.

In light of Morris's stipulation in Exhibit J-3 that the chunky brown substances in Bag No. 3 and Bag No. 4 were "cocaine base . . . in the form commonly known as 'crack,'" and does not offer any evidence contradicting the laboratory results or the stipulation, his arguments *post hoc* that the indictment contains "immaterial or irrelevant allegations" and that the jury instructions were "erroneous" are frivolous and do not merit an evidentiary hearing.

Likewise, Petitioner's claims that Counsel was ineffective for failing to appeal these issues do not merit a hearing because such claims are untenable and highly unlikely to be

reversed and remanded on direct appeal. Petitioner suffered no prejudice by counsel not pursuing such frivolous claims in his direct appeal.

**Sentencing Issues**

Petitioner asserts in Ground VII that counsel was ineffective for not arguing that the sentencing court erred in viewing the 100 to 1 crack to powder cocaine ratio as mandatory; and that appellate counsel was ineffective for not raising the issue in light of *Booker*. Petitioner's Memorandum at 21. Morris also claims in Ground XIII that his criminal history score was improperly calculated because he was assessed two criminal history points for an arrest in 2001 that did not lead to a conviction until November 2003; and that he was assessed three criminal history points for a burglary conviction in 1982 that he claims is "constitutionally defective." Petitioner's Memorandum at 27-30.

Morris was sentenced to 240 months on each count of the indictment as the mandatory statutory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) following the filing of the Government's Information under 21 U.S.C. § 851, without regard to the crack to powder cocaine differential embodied in the United States Sentencing Guidelines. *Booker* does not affect sentences imposed pursuant to mandatory minimum sentences set by statute. See *United States v. Espinosa-Cruz*, 244 Fed.Appx. 421, 424, n.6 (3d Cir. 2007) ("Espinosa argues on appeal that the District Court considered the sentencing guidelines to be mandatory, in violation of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Espinosa, however, was sentenced to the statutory minimum under 21 U.S.C. § 841(b)(1)(A); we therefore reject his contention). See also, *United States v. Hawkins*, 2008 WL 510493, 6 (3d Cir. 2008) ("Hawkins's twenty-year term of imprisonment was the minimum sentence required under § 841 for any person who unlawfully distributes five kilograms or more of cocaine and has a prior conviction

for a felony drug offense . . . . [T]he United States filed an Information prior to trial, pursuant to 21 U.S.C. § 851 . . . seek[ing] an enhancement sentence based upon his prior conviction if he were convicted. . . . [U]pon conviction, the District Court sentenced Hawkins to a twenty-year term of imprisonment, as required by § 841. Therefore, despite any Guidelines determination, the District Court imposed the minimum sentence allowed pursuant to statute, and its statutory determination was not clearly erroneous.).

Petitioner's claims regarding the crack to powder cocaine sentencing ratio and his criminal history score do not merit an evidentiary hearing because his sentence was mandated by statute, and not influenced by the ratio or by his criminal history score.

### Ground XII: Trial counsel violated Petitioner's Sixth Amendment right to effective assistance of counsel by failing to call Neil Chandler to testify at trial

Petitioner claims that trial counsel was ineffective for failing to call an important witness to testify at trial. Morris asserts that a Neil Chandler was on the witness list who counsel neglected to call, but if he was called he would have testified that he (Chandler) and a Joey Lewis, a.k.a., "Joey Crack," had borrowed Morris's truck, that they left the bag containing the drugs in the truck, and that Morris had no knowledge of the presence of the drugs in the truck and that he never handled the bag with the drugs. Petitioner's Memorandum at 26. Such evidence would have supported his defense at trial.

Pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, in order to expand the record and determine whether an evidentiary hearing was necessary on this issue, the Court directed Morris to file, on or before July 31, 2007, a detailed, sworn affidavit by Neil Chandler supporting his section 2255 petition. Memorandum Opinion and Order dated May 30, 2007 (doc. no. 81). Morris has never submitted the requisite affidavit to support an evidentiary hearing.

In order to show prejudice, Morris must make a *prima facie* showing that is not based on "mere speculation" about what Chandler might have said. *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989). See also, *Collins v. Meyers*, 77 Fed.Appx. 563, 565-566 (3d Cir. 2003) citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) ("Instead, there must be a plausible showing of how the testimony of a witness would have been both material and favorable.").

Since Morris has not provided a sworn affidavit from Mr. Chandler, he has neither provided an adequate factual basis for this claim nor provided the Court with clear and convincing evidence to rebut the deferential presumption of reasonableness afforded to trial counsel. Morris has not shown that he was prejudiced by counsel's failure to secure the attendance and testimony of this witness, and his assertion that Chandler would incriminate himself by asserting ownership or at least knowledge and constructive possession of the drugs is merely a bald assertion, which must be dismissed because it is not supported by the record.

**Ground IV: Due Process and prosecutorial misconduct**

Petitioner asserts that counsel was ineffective for failing to object to or appeal certain acts which he claims constituted prosecutorial vouching and prosecutorial misconduct. Specifically, Petitioner argues that the prosecutor asked defendant on cross-examination if two of the government's law enforcement officer witnesses were lying, and that during closing remarks, the prosecutor vouched for these witnesses' credibility and misstated the elements of the charged crimes. Petitioner's Memorandum at 12.

"For vouching to occur, two criteria must be met: (1) 'the prosecutor must assure the jury that the testimony of a Government witness is credible', and (2) 'this assurance must be based on either the prosecutor's personal knowledge, or other information not contained in the record.'"

*United States v. Vitillo*, 490 F.3d 314, 327 (3d Cir. 2007) quoting *United States v. Harris*, 471

F.3d 507, 512 (3d Cir. 2006) (quotation marks and alterations omitted) (citation omitted). "The

prosecutor's assurance may be based on either 'explicit or implicit' reference to information

outside the record." *Id.* quoting *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998).

"Vouching runs the danger of influencing the jury to disregard its fact-finding mandate in favor

of privileging and perhaps deferring to the view of the evidence as endorsed by a sovereign

representative." *United States v. Milan*, 304 F.3d 273, 289 (3d Cir. 2002) citing *United States v.

Young*, 470 U.S. 1, 18-19 (1985). While vouching most often occurs during closing arguments,

it can occur at any stage during the trial. *Vitillo*, 490 F.3d at 328.

**Cross-Examination**

The government asked defendant on nine occasions if Sergeant DeMarco and Officer

Brokaw were lying in regard to their testimony involving their interrogation of him and his

statement "the powder is mine, but not the rock." Tr. 11/09/2004 at 120-21, 124-25, 131-34.

While asking a defendant whether or not an officer lied on the witness stand is not technically

"vouching," because it does not assure the jury that the testimony of a Government witness is

credible based on either the prosecutor's personal knowledge or other information not contained

in the record, such questions are nevertheless improper, as the Court of Appeals for the Third

Circuit has held:

> Such questions invade the province of the jury and force a witness
> to testify as to something he cannot know, i.e., whether another is
> intentionally seeking to mislead the tribunal . . . [S]uch questions
> force defendants into choosing to either undermine their own
> testimony or essentially accuse another witness of being a liar.

*Harris*, 471 F.3d at 511.

While such questions may be posed if the defendant opens the door to them by testifying

on direct examination that a witness was lying, and while it is necessary to draw distinctions between conflicting testimony, it is generally impermissible to ask one witness if another witness is lying. *Harris*, 471 F.3d at 512. In this case, the defendant did not testify that the other witnesses were lying, and so he did not open the door to this line of questioning.

In reviewing a claim of ineffective assistance of counsel for failure to respond to prosecutorial misconduct, the reviewing court must (1) determine whether the prosecutor's comments violated the defendant's right to due process, (2) determine whether counsel's failure to object prejudiced the outcome of his case, and (3) determine whether this failure was objectively unreasonable. *United States v. Miles*, 53 Fed.Appx. 622, 630 (3d Cir. 2002) (citing *United States v. Lively,* 817 F.Supp. 453, 465 (D.Del.), *aff'd,* 14 F.3d 50 (3d Cir. 1993) (unpublished table decision)). On writ of habeas corpus, the appropriate standard of review is "'the narrow standard of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). It must be determined that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.*

Contrary to the Petitioner's assertion that counsel failed to object, the record shows that counsel did object to one instance of the government's improper questioning. Tr. 11/09/2004 at 125. Since counsel did object, the issue was preserved for direct appeal, and the analysis shifts to whether petitioner's due process rights were violated; if so, whether counsel's failure to raise the issue on appeal prejudiced Morris; and if so, whether the failure to do so was objectively unreasonable.

Upon review of the record, it cannot be maintained that prosecutor's statements "infected the trial with unfairness" to the point that Morris's due process rights were violated. There was

ample evidence in this case to support the defendant's conviction without considering the improper comments made by the prosecutor. The government was required to prove in Count I that Morris possessed 50 or more grams of cocaine base in a form commonly known as crack, that he knew that the substance was cocaine base in the form commonly known as crack, and that he intended to distribute the controlled substance. In Count II, the government was required to prove that Morris possessed 500 or more grams of cocaine, that he knew that the substance was cocaine, and that he intended to distribute the controlled substance.

To meet its burden, the government offered the testimony of another witness, Officer Lehew (who is not the subject of Petitioner's prosecutorial misconduct argument), who stated that he inventoried the contents of Morris's truck, and that he found bag containing the drugs in it in the truck that Morris was driving. Morris stipulated to an Allegheny County Coroner's report stating that in the four bags found in the truck, the substances involved were cocaine in the total amount of 1328 grams and crack cocaine in the total amount of 233.04 grams. The government also presented the testimony of Special Agent Schmotzer of the Drug Enforcement Agency, who testified to the workings of drug trafficking and distribution methods in order to show Morris's intent to distribute the cocaine and crack.

This evidence of possession with intent to distribute is more than sufficient to support the convictions without regard to Morris's statement about the crack and the powder, which was the indirect and underlying subject of the allegedly improper vouching. "Had the government's case been based primarily on [defendant's] purported confession in question, the prosecutor's misconduct may have resulted in prejudice warranting a new trial." *Vitillo*, 490 F.3d at 326 citing *United States v. Combs*, 379 F.3d 564, 572-574 (9th Cir. 2004) (the "case essentially boiled down to whether the defendant had confessed to a DEA agent" and the defendant was

forced to answer the question as to whether the agent was lying).

Although asking Morris if two law enforcement officials were lying on nine occasions is arguably improper under the *Harris* case, this Court cannot say that this misconduct deprived Morris of his due process rights under the foregoing standards. Since the evidence supporting the convictions was unaffected by this line of questioning, lacking a violation of petitioner's due process rights, the issue would not have merited a reversal and remand on direct appeal. Therefore counsel's failure to appeal the issue did not prejudice petitioner, and an evidentiary hearing on this issue is not necessary.

**Closing Remarks**

The AUSA asked during closing remarks what motivation police officers would have to lie, and then rebutted some hypothetical motivations to show that the law enforcement officers had no motivation to lie in this case. Trial Transcript, November 10, 2004 ("Tr. 11/10/2004") at 5-7. This line of rhetorical questions focused the jury's attention on the credibility of the officers as witnesses, and did not imply that the government was making assurances based on information outside of the record. In fact, the government pointed to specific instances on the record to support his contention that the officers lacked the motive to lie.

However, the prosecutor then stated "Ask yourself, what would motivate Officer Brokaw and Sergeant DeMarco to make up these statements to lie about this, *to put their careers, their jobs,* their word on the line, just to get a guy." Tr. 11/10/2004 at 7 (emphasis added). This was prosecutorial vouching, because the AUSA assured the jury that the testimony was credible based on information not contained in the record (i.e., the officers would not risk being fired). The United States Court of Appeals for the Third Circuit addressed a similar situation in *United States v. Pungitore*, 910 F.2d 1084 (3d Cir. 1990), where the prosecutor had stated:

> In fact, all those law enforcement people who paraded up on the stand in response to some testimony that was inaccurate by the defense that just wasn't so, all those people said it never ever happened and you've got to ask yourselves if all those law enforcement people and we as prosecutors violated our oaths, jeopardized our jobs, our careers, our right to practice law, they're [sic] right to continue as FBI agents, or there's another alternative.

*Pungitore*, 910 F.2d at 1124 (emphasis omitted).

The Court of Appeals found that, since there was no evidence on the record supporting the prosecutor's closing remarks that "law enforcement officers could not have behaved as unscrupulously as defense counsel alleged they did without violating their oaths of office and jeopardizing their careers," the AUSA's closing argument constituted improper prosecutorial vouching. *Id.* at 1125.

Nevertheless, "given 'the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and the Constitution does not guarantee such a trial.'" *United States v. Zehrbach*, 47 F.3d 1252, 1256 (3d Cir. 1995) quoting *United States v. Hasting*, 461 U.S. 499, 508-09 (1983). There is no *per se* reversal standard for instances of prosecutorial vouching, and comments must be reviewed on a case-by-case basis, "in the context of the entire trial, and to reverse only where the defendant has suffered prejudice." *Zehrbach*, 47 F.3d at 1267 citing *Young*, 470 U.S. at 11-12. "In determining prejudice, [the court] consider[s] the scope of the objectionable comments and their relationship to the entire proceeding, the ameliorative effect of any curative instructions given, and the strength of the evidence supporting the defendant's conviction." *Zerbach*, 47 F.3d at 1265.

In this instance, the inappropriate bolstering of government witnesses encompasses one sentence on one page of the nineteen pages of the closing argument, and the improper remarks

deal directly and exclusively with the questions to the defendant about whether the officers were lying, and are isolated from and do not affect the rest of the evidence presented at trial. further, the Court's final jury instructions informed the jury that: "As judges of the facts, it is your duty to determine from the evidence what actually happened in this case . . . . The evidence in this case consists of the testimony of the witnesses, the documents and other things received as exhibits, and any facts stipulated to by the parties. . . . statement[s], arguments, questions and comments by lawyers representing the parties in this case are not evidence." Tr. 11/10/2004 at 36-38.

As previously noted, there is strong evidence to support the defendant's guilt without regard to the two police officers' testimony. In the context of the entire trial, these statements constituted a *de minimus* portion of the closing argument, the jury was instructed that arguments from the attorneys were not evidence, and there is strong evidence to support guilt without reference to these Government witnesses. Petitioner was neither prejudiced by the vouching statements made by the prosecution, nor by counsel's failure to object to the statements, or raise the issue on appeal.

Petitioner also claims that in closing arguments the government stated that "Mr. Morris could be convicted for having the drugs in the truck alone," leaving out the elements of knowledge, dominion and control of the drugs, to which counsel failed to object. Petitioner's Memorandum at 13. Petitioner's claim may be dismissed without an evidentiary hearing because it is unsupported by the record. During closing arguments prosecution stated:

> But in any case, if you decide that Greg Morris was, in fact, caught dead with the drugs . . . Greg Morris says, oops, I got all this stuff, but Joe left it behind. *Well, if you believe Greg Morris was caught dead on the drugs, you can convict on that alone without reference to any statements. It's his truck, he's driving it, he*

24

*controls it, he has the stuff in his truck.  You can convict on that alone.*

Tr. 11/10/2004 at 35-36 (emphasis added).

The AUSA's statements were made in order to convince the jury that it had sufficient evidence based on Morris's constructive possession of the drugs to convict, whether or not they believed he made the statement "the powder is mine, but not the rock."   The AUSA told the jury that the Court would define possession and in fact, the Court did just that, defining the terms "possess," "actual possession," "constructive possession," "sole possession," and "joint possession" in accordance with standard, accepted definitions of those terms.  *Id*. at 45-46.  Thus the elements of knowledge, dominion and control were fully explained to the jury, and permitted it to find that petitioner possessed the drugs even if he did not actually own or physically possess them.   Moreover, the Court instructed the jury that arguments of counsel are not evidence. Since petitioner's claim contradicts the record, the jury was properly instructed on the law by the Court, and the Court gave appropriate instructions regarding argument of counsel, Morris was not prejudiced by counsel's failure to object to these statements, and therefore, counsel did not provide ineffective assistance.

### Grounds II and III: Violation against protection against self incrimination, and the use of a coerced confession.

Grounds II and III concern alleged violations of *Miranda v. Arizona*, 384 U.S. 436 (1966) and Morris's statement that "the powder is mine but not the rock."  Petitioner's Memorandum at 9-11.   Petitioner argues that his conviction was obtained by a "violation of [the] protection against self-incrimination," in that the statement made to Sergeant DeMarco "was involuntary and violates the Due Process Clause" of the Fifth Amendment.  *Id*. at 10.   Petitioner claims that the statement was "coerced by the totality of the circumstances," in that he was held for 7 hours,

he did not waive his *Miranda* rights, he requested a phone call to his attorney, and he was still intoxicated when he made the statement. *Id*. at 11.

Both claims must fail because, again, they contradict the record in that Petitioner testified under oath that he never made the alleged statement. Tr. 11/09/2004 at 113. If Petitioner never made the statement, as he testified under oath on the witness stand, then it can be neither self-incriminatory nor coerced. Since these claims contradict the record, they cannot be accepted as true, and do not warrant an evidentiary hearing. Petitioner may not testify one way, under oath, at his trial, then flatly contradict himself in a collateral attack on his sentence, and expect to be rewarded for what would be perjury if his current version of events is truthful.

### Ground V: Conviction or sentence obtained in violation of the protection against double jeopardy

Petitioner claims that the sentences imposed are "not concurrent for purposes of the concurrent sentence doctrine," and therefore his protection against double jeopardy has been violated. Petitioner's Memorandum at 15. The concurrent sentence doctrine states that "an appellate court may avoid the resolution of legal issues affecting less than all of the counts in an indictment where at least one count has been upheld and the sentences are concurrent." *United States v. Lampley*, 573 F.2d 783, 788 (3d Cir.1978). This discretionary doctrine avoids "resolution of legal issues affecting less than all of the counts in an indictment where at least one count has been upheld and the sentences are concurrent." *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1100 (3d Cir.1989). While Petitioner's argument is somewhat confusing and unfocused, there was no violation of the protection against double jeopardy.

Petitioner cites *Rutledge v. United States*, 517 U.S. 292 (1996), in support of his double jeopardy claim, but overlooks its explanation that:

> If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." [*Blockburger v. United States*, 284 U.S. 299, 304 (1932).] In subsequent applications of the test, we have often concluded that two different statutes define the "same offense," typically because one is a lesser included offense of the other.

*Rutledge*, 517 U.S. at 297.

In this case, there are two distinct statutory offenses of conviction, and each requires proof of a fact which the other does not, namely, crack cocaine versus powder cocaine. Petitioner was not convicted of both a greater and a lesser included offense. In Count I, the government had to prove that the substance was cocaine base, and in Count II the government had to prove that the substance was cocaine, for which government had to prove separate quantities and separate identities of the substances involved. Morris was sentenced to the mandatory statutory minimum in each separate count, to run concurrently, and was not twice put in jeopardy for the same offense in violation of the Fifth Amendment of the United States Constitution.

### Ground IX: The prior 1986 State drug conviction used to enhance Petitioner's federal sentence was constitutionally defective.

Petitioner claims that State court conviction used by the government for filing an information for sentence enhancement pursuant to 21 U.S.C. § 851 was constitutionally defective, and therefore, cannot be used to enhance his sentence. Petitioner's Memorandum at 23. Morris claims that he filed a Petition for Collateral Relief under the Pennsylvania Post Conviction Relief Act ("PCRA") in State court to contest the validity of the conviction in October 2006. However, 21 U.S.C. § 851(e) states:

(e) Statute of Limitations

No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

The information in this case was filed on November 5, 2004, and the State court conviction occurred on or about July 16, 1986. The conviction in State court occurred 18 years before the filing of the information, and petitioner is precluded from challenging the validity of the prior conviction. The government notes that a subsequent section 2255 petition may be filed to challenge a federal sentence when a state conviction which is the basis of the enhancement is vacated. Government's Response at 30. Because the prior State court conviction has not been vacated, this claim does not merit an evidentiary hearing. Should Petitioner ultimately be successful in having the triggering state conviction overturned pursuant to his PCRA petition, he may file a subsequent section 2255 petition raising the matter with this Court.

**Ground XIV: The federal courts have no jurisdiction in this case**

Petitioner asserts that this Court has no jurisdiction in this case, based on citations to President Truman and the Thirteenth Amendment. He argues that since the District Court knowingly lacked jurisdiction, his conviction has subjected him to "involuntary servitude" in violation of the Thirteenth Amendment because he must work for less than the minimum wage. Supplemental Motion, at 10-12. This claim is as frivolous as it is creative.

This Court has jurisdiction over this case pursuant to 21 U.S.C. § 3231. See also, *United States v. Risquet*, 426 F. Supp. 2d 310 (E.D. Pa. 2006) (discussing the history and validity of the District Court's jurisdiction under 21 U.S.C. § 3231). Since Petitioner was lawfully convicted in

a Court with proper jurisdiction, there is no Thirteenth Amendment violation.  Therefore, no

evidentiary hearing is necessary on Ground XIV.

**Ground XI: Counsel's multiplicity of errors prejudiced Petitioner and thereby denied h im his Sixth Amendment constitutional rights to effective assistance of counsel and a fair trial.**

In this ground, the Petitioner is reiterating his individual grounds claiming ineffective

assistance of counsel as a cumulative claim asserting that the overall effect of the alleged

ineffectiveness is now greater than the sum of its parts.  This claim can be dismissed without an

evidentiary hearing because it is just a restatement of all claims in the petition, none of which

provide grounds for relief.

## V. CONCLUSION

For all of the foregoing reasons, the Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. No. 70) and Supplemental Motion (Doc. No. 77) are HEREBY DENIED.

The Court finds that a certificate of appealability is not warranted in this case, as reasonable jurists would not disagree with this Court's finding that the motion and supplemental motion to vacate are without merit.


**SO ORDERED** this 14th day of May, 2008
s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:
all counsel of record

Gregory Lynn Morris
04488-748
SCI Allenwood
Low Security Correctional Inst.
Post Office Box 1000
White Deer, PA 17887